ROBERTS, J.,
for the Court:
¶ 1. On October 23, 2006, Lemartine Taylor pled guilty in the Rankin County Circuit Court to Count I, armed robbery; Count II, aggravated assault; and Count III, burglary of a dwelling. Taylor filed his motion for post-conviction relief (PCR) on September 19, 2011. The circuit court summarily dismissed Taylor’s PCR motion. Taylor executed the current appeal.
FACTS AND PROCEDURAL HISTORY
¶2. Taylor was indicted on March 1, 2006, on three counts. In Count I, he was charged with the armed robbery of Linda White Brett for taking her cellular phone and wedding ring against her will with the use of a knife. Count II charged Taylor with the aggravated assault of Brett, “based upon a series of acts connected together and constituting parts of a common scheme and plan[.]” Count III charged Taylor with the burglary of Brett’s home, also “based upon a series of acts connected together and constituting parts of a common scheme and plan[.]”
¶ 3. Taylor, represented by counsel, appeared before the circuit court to enter his plea on October 23, 2006. He indicated that he had read and signed or initialed each page of his guilty-plea petition, and that he had signed the acknowledgment that he had viewed the guilty-plea video. Taylor also indicated he understood the video and had no questions about it. The circuit court asked Taylor two times whether he had any complaints about his attorney; Taylor responded both times that he did not. Taylor agreed that he was waiving his constitutional rights by entering a guilty plea. The circuit court then thoroughly explained each element of the crimes he was pleading guilty to committing. Each time, Taylor responded that he understood the elements of the crimes. Then, the circuit court detailed the minimum and maximum sentences for each crime. Again, Taylor acknowledged he understood the possible sentences.
¶ 4. The State then presented the following facts it would use at trial to prove each crime. On December 7, 2005, Taylor, along with Bryce Brandon Heisser, Jennifer Dillon, and Javon Ransburgh traveled to Brett’s home and forced their way inside when she opened the door. Taylor held the knife on Brett while the others carried items from the home, including televisions, jewelry, a DVD player, and car speakers. According to the State, Taylor ordered Brett to hand over her wedding rings and cellular phone. Heisser told Taylor to kill Brett, but he declined. Heis-ser then instructed the others to kill Brett, and they also declined. Heisser took the knife from Taylor and proceeded to cut Brett’s throat and face and stab her approximately twenty-two times in her back, side, and stomach. Heisser took Brett’s car keys and gave them to Taylor. Taylor took the keys and drove Brett’s car to a parking lot where he abandoned it. He gave Brett’s ring to his sister.
¶ 5. At his guilty-plea hearing, the State also asked Taylor some on-the-record questions about the events that had transpired that day. Taylor indicated that he was holding the knife and told Brett to sit on the couch and not to look around. He stated he stood “[i]n front of her, like, on the side” with the knife, but did not hold the knife on her. Taylor also stated that he did not tell her to give him her ring, keys, and cellular phone but that Heisser was the one who told her to do that. Brett just handed Taylor those things because he was standing close to her. Taylor stated that he told Heisser to stop and then walked onto the porch when Heisser began attacking Brett with the knife.
*326 ¶ 6. After finding that Taylor’s guilty pleas were “freely, voluntarily, knowingly, [and] intelligently made and entered[,]” the circuit court accepted Taylor’s guilty pleas on each count. He was sentenced to serve thirty years in the custody of the Mississippi Department of Corrections (MDOC) on Count I, twenty years in the custody of the MDOC on Count II, and twenty-five years in the custody of the MDOC on Count III. His sentences in Counts II and III were suspended, and he was placed on five years of supervised probation. Taylor’s sentences were all ordered to run consecutively to each other.
¶ 7. Taylor filed his PCR motion on September 9, 2011, alleging ineffective assistance of counsel. The circuit court entered an order on October 18, 2011, finding that after reviewing “transcripts of [Taylor’s] guilty plea and sentencing hearing ..., and also ... [Taylor’s] criminal file,” Taylor was not entitled to any relief. Taylor’s PCR motion was dismissed pursuant to Mississippi Code Annotated section 99-39-ll(2)(Supp.2012). Taylor now appeals this summary dismissal and argues that he received ineffective assistance of counsel and that his guilty plea was not freely and voluntarily given.
ANALYSIS
¶ 8. Mississippi Code Annotated section 99-39-5(2)(Supp.2012) provides that a PCR motion involving a guilty plea shall be made within three years after entry of the judgment of conviction. This three-year bar has the following exceptions: an intervening decision of the Mississippi Supreme Court or the United States Supreme Court “which would have actually adversely affected the outcome of [the PCR petitioner’s] conviction or sentence; evidence that was “not reasonably discoverable at the time of trial” that would have caused a different result in the conviction or sentence; biological evidence that was not tested or could be retested and “testing would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution”;, and a claim that the PCR petitioner’s sentence has expired or his probation, parole[,] or conditional release has been unlawfully revoked.” Miss. Code Ann. § 99-39-5(2)(a)-(b).
¶ 9. Taylor entered his guilty plea on October 23, 2006, and his judgment of conviction and sentence was filed on November 2, 2006. Taylor did not file his PCR motion until September 19, 2011, almost five years after he entered his guilty plea and was sentenced. Further, Taylor has not presented any evidence that his claims fall within one of the exceptions described in section 99 — 39—5(2)(a)—(b). “[M]erely raising a claim of ineffective assistance of counsel” is not sufficient to avoid a procedural bar. Maston v. State, 750 So.2d 1234, 1237 (¶ 14) (Miss.1999)(cit-ing Bevill v. State, 669 So.2d 14, 17 (Miss.1996)). We decline to address the issues Taylor raises because his PCR motion is time-barred and not within one of the applicable exceptions.
¶10. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.